Our final case this morning is number 2423, 31 Vancott v. Collins. Okay, Mr. Hockquist. Thank you, Your Honor. May it please the Court, on behalf of Mr. Vancott, I do want to thank the Court for the opportunity to present his appeal. This appeal asks the Court to determine the proper interpretation of Diagnostic Code 5003. Under the plain text of this Diagnostic Code, a 10% rating only requires a finding that objectively confirms limited motion. This could be done with evidence of painful motion, swelling, or, as in this case, a physical exam showing flexion is limited to 130 degrees. The regulation only requires some finding that there is limited motion, and once the VA has confirmed the presence of that limited motion, as they did Mr. Vancott's knee, he is entitled to a 10% rating. VA is then required to separately compensate him within the confines of Section 4.14 for the swelling and pain that he also experiences. The Veterans Court misinterpreted this regulation to require that VA rate any disability that could be used to support a finding of limited motion as limited motion, even when, as here, those disabilities could support a separate rating under Diagnostic Code 5259, and this is error. So, do you agree that if both ratings required a finding of pain, that we'd be in a pyramiding situation and he couldn't get both ratings? I don't think so, Your Honor. I think that if both only required pain, then yes, there would be pyramiding, or there would most likely be pyramiding, because pain, as Saunders noted, can produce different kinds of impairments, and we have to look at the specific impairment that's being compensated. So, your theory is that this is not a situation in which pain is required, that under 5003, that flexation limitations could achieve the rating, and that clear and unmistakable error was not relying on the flexation and relying on the pain instead? Is that the theory? No, sir. Your Honor, the theory of the error is that, and if you look on page 47 of the appendix, at the very bottom, the board found that the June 2011 examination reported pain, swelling, and decreased range of motion, and then it says the veteran's flexion was to 130 degrees, which is limited, and it does not meet the criteria for a 10 percent rating. Under our reading of the diagnostic code, that finding supports a 10 percent rating. The board then goes on to say... Oh, why is that? There's a fact finding here that the flexation limitation is not sufficient to come within 503, right? No, Your Honor. It's not sufficient to support a rating under the limited motion diagnostic code, which is 5260. If you look at how 5003 compensates, or I'm sorry, how it rates, it rates based on the limited motion, and so when the flexion, which is rated under 5260, is non-compensable, 5003 steps in and authorizes a 10 percent rating, and what the board did then was said, however, in consideration of the swelling and painful motion, they separately demonstrate limited motion, and that's where the error comes in, is that they're using two findings to support where only one is needed, a 10 percent rating, and so because he had the limited flexion, the first sentence, I'm sorry, the second sentence of 5003, it says, when, however, the limitation of motion is non-compensable, a rating of 10 percent is for each major joint, and that's the language that supports the legal analysis that underpins the Q rating. So the theory is that the flexion is sufficient to get the rating? Is that the idea on 5003? Absolutely, Your Honor. That's exactly correct, and this is born again by the plain language. I thought the board said that it wasn't. Well, the presence of any limitation of motion under this diagnostic code supports a 10 percent rating, and that can be documented or confirmed by findings such as swelling, spasm, or painful motion, but it can also... Is that the legal question that we're confronted with as to whether any flexation limitation is sufficient to get you a 10 percent rating under 5003? Not exactly, Your Honor. That question has been settled already by the courts and the Veterans Court, which again was binding on the VA when it issued this decision in 2012. We cited to Mitchell and Hicks. Those two cases leaned heavily upon Lichtenfeld and some other case law, but we know that any limited motion is authorized a 10 percent rating. I'm trying to understand what your legal argument is, and I've suggested one to you. You say that's not right. What is the legal argument? It's not precisely right, Your Honor. What the legal question is, is under this diagnostic code... Which one? 5003? 5003. Yes, Your Honor. When the veteran has documented limited motion, flexion or extinction in the knee, and here it's flexion, is that enough on its own to warrant a 10 percent rating? We believe it is. The Veterans Court said that it's not... Even though the rating was actually given because of painful motion, right? The rating, Your Honor, was given because diagnostic code 5003 requires it. The error is where the RO and the board added additional impairments that weren't needed. And the reason that this is important... I'm not understanding what you're saying. He got the rating under 5003 because of painful motion, right? That's the error that we're arguing, Your Honor. What's the error? The error is that because he had flexion limited to 130 degrees, where full flexion was 140, that impairment all on its own supports a 10 percent rating under 5003. And then under 4.25B, the VA is required, in addition to its duty to maximize under 3.103A, to separately rate the additional impairments that came from this service injury. And I want to emphasize that these observations were made while he was still on active duty. And there's no dispute from either side or the Veterans Court that these impairments are not service-connected disabilities. And so, 4.25B requires the VA to separately rate them. And the legal question here is... Where does the board make the legal error? Where do I find the statement which is legal error? So, again, page 47 of the appendix at the bottom, the board recognizes that he has limited flexion. In the very last sentence there, which leads over to the next page, however, in consideration of the swelling and painful motions, they, and I would add in, also demonstrated limitation of motion. And so, again, there's... So, the error is in the prior sentence, the veteran's flexation was 130 degrees, which did not meet the criteria for 10% rating. That's the error? No, Your Honor, because... That's under 5.260, not 5.003? Right, Your Honor. But as under the instructions for 5.203, it directs it to rate as limited motion under the appropriate diagnostic codes. The appropriate diagnostic code for limited flexion is 5.260. And so, because, again, the second sentence of 5.003 says, when the limitation of motion is non-compensable under the appropriate diagnostic code, here being 5.260, 10% is for application for each joint. Then it says, and this is where... Going on to page 48 of the appendix, as the veteran's left knee disability did not manifest to 45 degrees or less, the swelling was contemplated in the assigned compensable rating. That's the error. The swelling should not have been used to support the 10% rating because he already had enough disability with the limited flexion to support the 10% rating. And then, the swelling and the pain under 4.25B is required to be considered under a different diagnostic code, which the Veterans Court recognizes is because of the meniscal injury, Diagnostic Code 5259. That question wasn't reached. And so, this court doesn't have to... Should not discuss whether there will be a separate rating available, only that there were impairments that could support a separate rating that were erroneously... Your theory is that any flexation is sufficient under 5.003. He had some flexation limitation. Therefore, they made an error in determining that he didn't qualify because of flexation and erroneously went to pain, right? Correct, Your Honor. The pain and swelling. And by using the pain and the swelling, they separately violated 4.25B by failing to separately compensate those impairments under a separate diagnostic code. And that's really the basis of the error and the request for revision was that he should have gotten two separate ratings, one for the limited flexion and then one for the pain and swelling. Again, that separate rating wasn't reached by either the board or the Veterans Court. And so, that's why we ask for relief that this court find that the plain language of this regulation only requires limited flexion. And because there were additional service-connected disabilities that could be compensated separately, that the board needs to back and make those findings in order to determine whether he would have qualified under the manifestly different standard of the CUE. It seems that what the regulation requires is objective evidence. What makes it clear and unmistakable error for the VA to look at all objective evidence that may be in the record then, which here included pain and swelling? Two points, Your Honor. One, as I mentioned, 3.103A requires the VA to maximize benefits. And so, it says in there that the VA, when it issues a decision, and this has been around since the 1950s and even before that, the VA has to award all benefits that are supported by the record and the laws that apply. And that's where the legal error comes in. And separately, 4.25B, again, says that when there's additional separate disabilities resulting from a single injury or disease, that they have to be separately rated. Assuming, of course, there's, again, these are all the findings that the board would have to make on remand, but that they don't violate 4.14, that they are true, do fall under a separate diagnostic code. But we know from the board's findings that all three of these disabilities are service-connected. And that's page 47 and 48. The board very clearly shows that these were impairments, that they were compensated. The VA just incorrectly compensated them by grouping them together under one diagnostic code when they should have used the bare minimum limitation of flexion to support the 10% rating. But I don't read 5.03 as saying that limitation of flexation is enough, as it says it has to be objectively confirmed. It wasn't. And that's what the Veterans Court said, Your Honor, is how they erred in their decision, that the finding, the physical exam that documents the limited flexion is objective evidence of limited motion. But what the Veterans Court said was the next sentence requires the VA to also include all other objective evidence showing other impairments that could also support a limited motion finding. And that's where the Veterans Court erred in both affirming the board's interpretation and in their Okay, you're in your rebuttal time. Do you want to save it? I will save it. Yes, Your Honor. Thank you. Okay, Ms. Gropp. May it please the court, on behalf of the Secretary of Veterans Affairs, we ask that the court affirm the Veterans Court's denial of Mr. Mancott's Q claim here for clear and unmistakable error. That is an extraordinary remedy, and it's simply not present here on the law or the facts. I'd like to initially address a misrepresentation of the record from my esteemed opposing counsel. Petitioner repeatedly contended in their brief and before this court that there were three disabilities. There are not three service-connected disabilities. The factual record is very clear that Mr. Mancott was diagnosed with one service-connected condition. That's a left knee medial meniscus tear, the status of that knee post-surgical repair. That's one condition. There are not two service-connected conditions for arthritis and meniscus injury, as argued in the opening brief, nor are there three service-connected conditions for limited flexion, pain, and swelling, as argued in the reply. But a single service-connected disability could entitle you to ratings under two different provisions of the ratings. That's absolutely correct. Why don't you address whether his interpretation of 5003 is right or not? We would submit that it is incorrect. Petitioner here does not dispute that it was appropriate for the ratings official to rate by analogy. The condition of the left knee did not clearly fit into any known diagnostic code at the time. And so the rating official turned to 5260, which is limitation of flexion, and 5020, synovitis. As the Veterans Court aptly observed, synovitis is an inflammation of a joint painful on motion characterized by swelling. The rating official clearly considered both the limitation of motion, the pain, and the swelling reported by Mr. Vancott and observed at his VA exam back in a decade or so ago. But he eventually got rated on 5003, even though that's an arthritis thing. It's rating by analogy, right? Correct. So the question is, he says 5003 allows a rating for flexation limitation even without pain, and that was the that is construed to require pain, which he says it didn't require. We would submit that that interpretation is plainly erroneous based on the plain language of 5003. Turning to 5003, it provides, that's an arthritis rating, but it's applicable to the synovitis in 5020 pursuant to 5024. That provides that if, under the relevant diagnostic code, here 5260, limitation of flexion, there is no compensable rating. That's the case here, right? His flexion was 130. A 10% rating doesn't kick in under 5260 until somebody's flexion is limited to 45 degrees. If the limitation of diagnostic code, it may be compensated at 10% under 5003 if there is objective evidence confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Nowhere in 5003 does it say, if a veteran shows up at the VA exam and simply can't extend their leg one degree, two degrees, 100 degrees, it is automatically compensable, which is the sum of petitioner's argument. Any limitation of function that's not otherwise compensated here under 5260 would be compensated under 5003 if the examiner found objective evidence of pain, swelling, or muscle spasm. And the record here is clear that Mr. Vancutt received that 10% rating by analogy through 5003 for 10% based on the pain and swelling that the examiner noted in connection with the limitation of flexion. You don't get to compensation. Why can't the objective evidence be simply the doctor's finding of a limitation of movement or flexion? Because 5003 is specific that they're looking for some secondary evidence that the joint is affected other than the minimal flexion. To accept petitioner's argument that one degree or two degree or 10 degrees limited flexion is compensable at 10% would read the limitation of flexion provision of the Diagnostic Code 5260 out of existence. That limits compensability for limited flexion to 45 degrees or less. Normal flexion is 140. Mr. Vancutt's flexion was 130, right? Not normal, but relatively close compared to what was compensable under 5260. So he would not have been entitled to any compensation absent some other evidence, such as pain, swelling, or muscle spasm to make that limited degree of limited flexion compensable in this case. Now, we don't dispute that the ratings official could have within their auspices have provided separate ratings if the rating official had found cause to do so. They did not. This is not a straight appeal of a benefits determination, but even in that context, this court wouldn't revisit a factual finding. This is a Q claim. We submit that petitioner has in no way established that reasonable minds could not have concluded as the rating official did in this case or the board or the Veterans Court that Mr. Vancutt was entitled to one disability rating of 10% for one service-connected condition. Mr. Vancutt repeatedly asserts that there were other service-connected conditions. Hey, there was limited flexion, there was pain, there was swelling. Those are three conditions. He needs two to three ratings. That's not what the record reflects. The record reflects one service-connected condition, status of his left knee post-surgery. That status, the examiner observed, was a limitation of flexion of 130 degrees, swelling, and pain. I recognize it's not this case, but 5003 calls out objective confirmation by finding such a swelling, muscle spasm, or pain. Let's just say it was clear that a veteran received 5003 compensation based on muscle spasm. Could they then get, without violating the pyramiding rule, another 10% compensation under the other code for pain and swelling? It's hard. It's not the record that we have here. It's hard to imagine that the examiner would be teasing those three things out and looking at a knee. But yes, is a record like that possible? Sure. We have conceded that an examiner, then as now, could have afforded separate ratings if it was determined that it was appropriate. But here it was determined it wasn't appropriate, that that pain and swelling was the basis for the limitation of function rating. Without the pain and swelling, Mr. Vancott would not have been entitled to compensation for limited flexion. He only gets the 10% rating for limitation of flexion because of objective evidence of pain and swelling. Do you agree that under 3.103A, the duty to maximize, if there were some other objective evidence, I don't know what it is, let's put aside muscle spasm, some other completely unrelated objective evidence, that then someone in Mr. Vancott's position might be eligible to get compensated under the two different codes? Provided it was not an overlapping or duplicative diagnosis, symptom, or manifestation, right? That's what the... It would depend on what the rating was based on, right? Correct. The mere fact that theoretically it could be based on something else doesn't prevent the Pyramiding Rule from coming about. The Pyramiding Rule depends on how it was evaluated. That's correct. Right. So you're not going to... If you're compensating pain and swelling in under one diagnostic code, you're not going to then do it under another diagnostic code because that would be duplicative and violate the Rule against Pyramiding. This is adjoined. He has limited emotional because he has pain and swelling. He received a 10% rating for that limitation of motion based on the pain and swelling that was there. Absent the examiner's consideration of pain and swelling, there would have been no compensation for limitation flexion. But even if this court is concerned that one could have at the examination stage have viewed these facts differently and compensated differently, it's of no moment. We are now before this court within the lens of Q. Q requires a clear and unmistakable error that an error was made at the time of the decision based on the facts, the record, and the law that was available at the time. And that error manifestly changed the outcome. I don't believe, and as we argue in our briefs, that one can say it was clearly an unmistakably error for the ratings official to have viewed the condition in this light. And it's not the province of this court now on direct appeal or certainly within the confines of Q to re-adjudicate or reconsider what conditions Mr. Van Cot should be diagnosed with, to reconsider or re-adjudicate which DC codes are appropriate. This is Q. I don't think you can say that it is patently unreasonable based on the face of the diagnostic code to have limited Mr. Van Cot to 10% rating for limitation of flexion based on the observed pain and swelling in that joint. Mr. Van Cot spends a lot of time arguing that 50.03 is satisfied by limitation of flexion alone. As I've already addressed, that's not the case based on the plain language of 50.30. The examiner needs to be looking for something else, such as pain, swelling, or muscle spasm, in order for that limitation of flexion to be compensable. Mr. Van Cot does not meaningfully address that plain language of the regulation at all in either the brief or an argument. Anything else? No, but just to piggyback on Your Honor's question about whether or not manifestations could be compensated in a duplicative manner, we cite in our brief at page 12 the Amberman case, that is a case of this court, in which there were two service-connected disorders, bipolar and PTSD, that manifested with overlapping symptomology. And in that case, this court agreed that there was not cause for two ratings because the manifestation, although two service-connected conditions, the manifestation was the same for both. Here we have even less evidence. We have one service-connected condition that had manifested in three related ways, integrally related ways, and that limitation of flexion was already compensated based on the pain and swelling in the joint. If the court has no further questions. Okay, thank you. Okay, Mr. DeHoffquist. Thank you, Your Honor. I want to start by just pointing out that the government has raised a handful of arguments that were not presented in their brief, and I'll do my best to respond to them with the amount of time I have. But first, I want to go to was that Mr. Bancott has just a single service-connected condition. It doesn't make any difference. The question is whether there are two different manifestations, right? That's exactly right, Your Honor. I think the government agrees with that. They do, and so I want to turn to what their interpretation is. Counsel argued here that in the plain text of the regulation, and I'm paraphrasing mostly here, but she says that the VA may be rated if there is objective evidence. The word may and if does not exist in this regulation. The words, the regulation does say a 10% rating is for application, and then only that limited motion must be objectively, not if it's objectively confirmed, and that kind of forms the underpinnings of how the Veterans Court interpreted it. In Lichtenfels, which I mentioned in argument, but again, it's reinforced in Mitchell in particular, and that site is one that at 484, 1991 case, that court said painful motion is limited motion. The government's interpretation doesn't make any sense because they say that on the one hand, you can get two separate ratings for, say, muscle spasms and pain, and then as Judge Stark asked, some other objective evidence, but the actually limited motion is not compensable under this regulation. That just simply doesn't make sense, and it ignores the plain language. My last point, if the court will allow me, is that the government also made a finding or asserted that the record shows a finding that the limited motion was caused by the pain and swelling. That is also not the way that the board addressed it. Again, turning back to page 47 and 48. Thank you. Thank you. Thank both counsel. The case is submitted.